All right, here ye, here ye, here ye, this Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Robert P. McLaren is out. Please be seated. Your Honor, this is the third case in the morning call of 213-0566, Fireman's Farm Insurance Company v. Rockford Heating & Care Conditioning. On behalf of the appellant, Mr. Scott J. Larson. On behalf of the appellee, Ms. Chantelle Delcas. Mr. Larson. Good morning, Your Honor. Good morning. Good morning. You may proceed. May it please the Court and Counsel. We're here before you today seeking reversal of the underlying court's motion to dismiss our case. What we're looking at in this particular instance is we're almost looking at an analysis that involves a funnel. What we have to do here is we have to start at the top of the funnel. And the start at the top of the funnel is that this is a property damage case. It is not a personal injury case. So in terms of trying to determine whether or not a four- or five-year statute applies, what we do is we start at the general statute of limitations. And that is the five-year property damage statute of limitations. What we then have to do is to determine is there any more specific statute which governs this proceeding, which would otherwise change that five-year statute of limitations. So in the Court's analysis, the Court has to start from the premise that five years applies, unless there's an exception that brings it to a different result. The defendant in this case has asked the Court to apply Section 13-214 of the Code in order to have a four-year statute of limitations apply as opposed to a five-year statute. The construction, design, management, and supervision part, right? That is correct, Your Honor. And the actual title of that statute is sort of our very first instructive note on this case because that's the title that they're using to describe what that statute of limitations is for. It is for design, management, and supervision. That's a very specific body that's going to govern this particular proceeding. But it then goes on to say, or construction of an improvement to real property. So it's in the alternative. Absolutely. And in terms of if you're looking at subsection A of that statute, you'll see that it enumerates the various portions of activity that can be brought under that four-year statute. It's got to involve some construction-related activity in terms of design, planning, supervision, observation, management of construction. We know that in this instance, the installation of a temporary heating ventilation system to a temporary heating system as part of a construction project, that none of those factors are implicated. Here's maybe my first question. I know that the heating furnaces that were hung were temporary. Was the ventilation system also temporary? Yes. And in this instance, the only way that the four-year statute of limitations could apply in this case would be, is that if the court were to deem the installation of the temporary ventilation system to be an improvement to real property. And for that, we continue down our funnel. And for that, we look at the St. Louis First Rockwell case, which helps us describe and understand what are the factors to determine if this is an improvement. The four factors that are enumerated, number one is, was the work that was done meant to be temporary or permanent? We know it's temporary here because that's actually what was installed, and that was what was alleged to be installed was a temporary ventilation system on a temporary heating system. So we know that it's not permanent. So factor one says it's not going to be four years. Factor two, is the work an essential component to the overall system? No. That system that was installed was going to be removed. It was not going to remain with the property. It was going to be temporary in nature. It was not going to remain, and that's key to determining was it an essential component of the system. If it was essential, it would remain. It would not be removed. Wait a second. Does the word essential mean that it remains? I thought permanent means that it remains. Essential means that it's necessary. Well, in terms of what is an essential component, you have to look at it and say we have something that's temporary in nature here, Your Honor. It's not going to remain. And so if something's not going to remain with a system, it's not going to be essential because, indeed, here our heating system is temporary in nature. The underlying fact is that this temporary heating system, which our client installed, was done so that work could be done in the winter months. Well, what about that argument? The temporary heating system and ventilation system, can't you argue, was essential to completing the construction? No. You cannot make that leap because it was, and that goes to the McGee case, which talks about whether or not that body of work was incidental and necessary for the completion of the construction. And my submission to the court is that that is not one of the factors that is relevant to the court's analysis. That is McGee putting additional factors on top of the St. Louis factors. There's nothing in the St. Louis case, which is the Supreme Court case. You're saying McGee is wrong. Absolutely. McGee is absolutely wrong. And, in fact, we know that it's wrong. And we know that it's wrong from the very own language that's used. And it's actually written in its holding. The holding of that case, which is on page 236 of that decision, it says, under these circumstances, we hold that plaintiff sustained his injuries while working at a construction site. Stop. They say that there's a four-year statute that applies merely because the plaintiff is working at a construction site. They then go on to say the temporary lighting installed in the basement was clearly incidental to and an essential part of renovation of the premises. That is not what the law says the analysis needs to be here. The law is based on the Supreme Court case of St. Louis, which is these four factors. So here, in their own holding, they're saying we're going to impose this four-year statute merely because it's on a construction site. Not true. And that's when we go back to the statute and we look at it. And under that four-year statute, because it's a more specific statute, we have to look at that statute as going against the grain of the more general statute. So it must come under the heading of that four-year statute in order for it to apply. And we know that the only way that it does that is that this is an improvement. So you're saying under these factors enunciated by the Supreme Court in St. Louis v. Rockwell, whether it's temporary or permanent, whether it becomes integral part, whether it increases the value of the property, enhances the property, you're saying none of those factors apply? Correct. And I think that a good way to look at this is if the court were to find otherwise, you're looking at a situation where where does it stop? What couldn't be incidental to a construction site? What if I brought flowers to a construction site? Or put up temporary heaters, portable heaters. Well, temporary heaters, that's not permanent. It's not. It's meant to be temporary. So factor one says it's not going to be a four-year statute. It's not an essential component to the overall system because it's not going to remain with the system. If it was the actual heating system that was installed, that would be a different story because that would remain with the real property. Does it increase the value of the property? No. In fact, I would submit it doesn't do anything to the value of the property because it's going to be taken out. In a different analogy, you might say if someone were to be assessing the value of that property at some point in time in the future, how could something have value that is no longer there? And the final? If this construction is going on during the winter for whatever reason, could they have installed that permanent flooring or done any construction that needed to, I assume, dry without some temporary heaters? That would be a fact determination as to whether that could have been done. In this instance, they're using temporary heating to help them install the permanent flooring. That's a choice, but it's not anything that implicates any one of those four factors. Not management of construction? But the decision to install the temporary heaters was made by my client, not by them. And a good way to look at this is, in essence, if you really broke down what did the defendant do here? My client's the general. He comes in and says, we've got to put in floors. You know, in order to put in the floors in the winter, we've got to put in a heating system. You know what we need to do? We need to vent that. Hey, you guys come in here and put in your ventilation system. That's all they did. There's no design. There's no management. Everything that they are doing is absolutely temporary in nature. It does not stay with the property. It's not an improvement. It's temporary to help what the real improvement is. The floor. Right. And that's the only thing we know from this record, that it was designed to assist it, correct? Correct. But it was designed to assist part of the statute. No. You look at the four factors. And I think the problem that we have is we have McGee. And, again, I absolutely submit McGee's wrong when he decided it. Well, McGee, in any event, was it a public court decision, was it not? That's correct. A four-year statute is a public court decision. Right. And so the summary of my argument would be simple. You start at the five-year statute. You can only take yourself out if you come under the four-year statute. So the only way you're going to come under that four-year statute is if this court finds that what they engaged in was an improvement to the premises. And the only way that the court can find there's an improvement to the premises is if they find in the affirmative on those four factors enunciated in the St. Louis Supreme Court case. Well, I don't know. I don't think I go that far. Would we have to find that all of the factors apply? Your argument has some intuitive appeal, so to speak, that none of them ostensibly apply. But I don't know that we have to find that all of them apply. No. And I think in doing so, the court's going to look at the totality of it. Right. And in this case, I think it's clear none of them apply. Okay. Thank you. Ms. Bielskis? Belskis. Belskis. You may proceed. Thank you. Thank you. Can you please look forward? Could you pull that down just a bit? Sure. Thank you. No problem. Can you hear me better now? Yes, I can. And I'll try to speak up a little bit. As counsel pointed out, this is really an issue about which statutory provision applies in this case. Whether the general statute that's designed to apply to cases generally, 13-205, applies for the particular that relates to a more particular subject like the construction statute, 13-214. And the case law is consistent there, as the court is well aware. If there's a particular statute that applies, then the particular prevails versus the more general statute. And in this particular case, addressing these two particular statutes, 205 and 214, the Illinois Supreme Court has held that 13-214 is the specific statute of limitations pertaining to construction-related activities, and it takes precedence over the more general five-year statute as set forth by counsel. And it also should be noted that 13-214, the construction statute, is one of its main purposes is to provide or to prevent liability and perpetuity for cases just like this, against persons involved in the design and construction of buildings, and that includes architects, engineers, and contractors. Both parties in this case are contractors. One's the general and one's the sub. Further, there are even cases that have gone so far, one of them being Continental v. Walsh, a First District case, that states that since the passage of the construction statute, that section 13-205 has been held inapplicable to architects, engineers, and contractors. And again, that's what we have here. We have a negligence action between, essentially, it's brought by Fireman's Fund, but between a general contractor and a subcontractor. So, counsel's right, there's no allegations in the complaint or elsewhere, suggesting that my client was involved in the design, planning, supervision, somehow, of this construction project. But what we know is that this was a new building being built, that's alleged in the complaint, and that the argument here is over that simple, seemingly simple phrase, construction of an improvement. That's really the issue for us. That's really the issue here. Let me ask you this. He's referred to, and Fireman's Fund does ostensibly point out, criteria or factors to be considered in determining what constitutes an improvement to real property. He makes a fairly compelling argument that given the temporary nature of these systems, none of those factors really apply to the situation. So tell us if he's wrong or why they do apply to the situation. Well, first of all, I will state that I don't think that those are the only factors that can be considered. I think that there is additional case law to suggest that, to look at whether the activity is construction related. I know the first district has applied an activity analysis. This court has talked about whether it's a construction related activity, more as a broad. Well, I mean, what wouldn't be a construction related activity? I suppose, to use my Monday example, if you brought in space heaters to facilitate the construction, arguably that's a construction related activity, even though you move them in and you move them out. Well, I would say that in that example, you're not doing any sort of installation. And I think that's a distinguishing factor. You're bringing in space heaters and, I'm guessing, plugging them in. But in this building, there was no, well, I don't know if there's electricity, but there was no heat. There was no floor. Was the temporary nature not a significant factor? If something is only there for a very limited temporary basis, isn't that a relevant consideration? I think it's a relevant consideration, but counsel wants that to really, I mean, he's applying it to all four factors, but it's not the only consideration. And in this case, like in the McGee case, what you have is something that was installed that became essential to the construction of that building. The building itself is an improvement to property. The floor was an improvement to that property. This is a new construction such that there was no heat, no ventilation system, and no floor. The whole thing is an improvement to property. I don't want to press you on it. Sure. Are you tacitly conceding that the situation here does not meet the criteria as laid out by the Supreme Court in firing? No. No, I am not conceding that. I will concede that it wasn't meant to be permanent in nature. That's quite obvious. But as Justice McClaren inquired about, doesn't essential mean, I don't want to misquote you, but means necessary, necessary to the construction process that was going on there. Did this ventilation become an integral component of the overall system? No, it did not. But the flooring did. And the building itself, again, the whole process would have, at least the flooring part of this process, would have stopped had it not been for the ventilation being installed to vent the separate furnaces. I see your point. So you're taking a very broad view of the statute. I'm taking it. You're relating it to the overall project as opposed to whether or not it added value and whether or not it was permanent, whether it became part of the overall system. Right. And as an example that I would use as opposed to the space heater example, look at excavation work. Excavation work. There are a lot of excavation companies that come on a site. They prepare the site for building upon it, for whatever they're going to do. They're grading it. That's not a permanent item that's being installed. That's not something that's becoming a part of an integral system. But it's an essential component to the improvement that's taking place on the site. Here's what I think to frame it. If you look at the words of the statute, it says construction of an improvement. So reading that literally, it means construction of an improvement. Or does it mean something that facilitates the construction of improvement? Your argument is very compelling that it's something that's necessary, essential, and facilitates the construction. But you could read the statute as saying it has to be something physical. It's a construction. It's an improvement to the real property. Add something. Right. Not just an essential part of the construction process. You're taking a very broad view of the statute. I am. And I agree with what Your Honor is saying. If you take the exact language and you only look at the exact language and don't look at the case law that's interpreted, then you could say that no, my client was not constructing something. They were installing something that was essential and important to the ongoing construction process that was there. No different than somebody who's going in and setting up scaffolding, somebody who's doing an excavation, all of those things. And all of those things fall within the construction statute. What is the construction of an improvement to real property? What is an improvement to real property? Well, an improvement, there are lots of different examples as to what's considered an improvement. I would submit to the court that the McGee case is the only case that's been presented by either side that's even factually similar to what we have here. But an improvement, importantly, has got to be more than mere replacement or an ordinary repair. And what we have here is neither. There was no heating system there. There was no ventilation system. So if you take that language, more than a mere replacement or repair, and then you take counsel's argument that it's not an improvement, well, then what is it? Well, in this case, is the improvement the flooring that could not be done without the heating and ventilation system, or is the improvement the actual ventilation heating system? Well, I think the argument could be made for both. The ventilation system was put in place so that the heaters could run, so that it improved the use of the space. So the equipment, the ventilation system, again, I don't know how to, facilitated this improvement. But if you take a narrow view, it was not in and of itself an improvement because it was taken out. Supposedly was going to be taken out. You didn't get to that. That's how it's going to turn out, how broadly or narrowly you read that phrase. I agree. And I want to get back to your question, too, about the four criteria under the St. Louis case. And the fourth factor is whether the use of the property was enhanced. My argument to that is that, yes, the use of the property was certainly enhanced. It allowed them to continue on with the construction in the winter months when they otherwise would not have been able to. But was it enhanced by the improvement itself or by what the improvement allowed it to do? The temporary ventilation system that was taken out doesn't improve the value of the property because it's not there anymore. True. I can't make that argument. But it's the same as an excavation. People, you know, if you went out and you were an excavator and you did your work on the site and somebody came out there and valued the property, they might say that actually the property value has decreased because now you've torn it all up with your equipment. But it certainly is an essential and important component of the construction site. And those types of cases, as an example, as I cited, Continental versus Walsh, the First District case, the excavations fall into that 13 to 14 statute. This is analogous to that. When they build a building like this, do they have a construction schedule? I would imagine that they do. Who sets up that construction schedule? Well, that would be the general contractor. What about the architect? The architect could be a component of that as well. What if they put this on the schedule, put in ventilation and heaters? You know, I assume you've heard of the word synchronon, that without which? Okay. Otherwise referred to as synchronon. It's Latin. Yes. Either way. Thank you. NSC Aniqui Anani, which is Pig Latin. But can you conceptualize the idea that this was a synchronon and that the construction could not go forward nor could there be improvements until warmer weather unless this was done? And who made that decision? Your subcontractor didn't make the decision. Your subcontractor contracted to do it based upon somebody else who made the decision to do that. Correct. Who made that decision? My assumption would be that that would be the general contractor, First Rockford Group, who is insured by Fireman's Fund. And I would agree. So if the contractor had made some error in the scheduling or the design or whatever of using ventilation and heaters, he would be immune, but the subcontractor wouldn't under Mr. Larson's argument, would it not? Because it would fit within the Supreme Court decision as to the design and supervision of the construction of the premises. Then it would fall within the construction statute. It wouldn't have to be an improvement. All it has to do is supervise and design it. And the contractor is immune under the four-year plan, but your client isn't. And have you ever heard of the term mutuality? Yes. What does that mean to you? Well, I think the two parties were working together in this respect. I mean, they are working at the direction of the general contractor. Well, what I'm getting at is it means that based upon Mr. Larson's interpretation, a contractor and an architect are immune from liability, but a subcontractor under these circumstances isn't. And I'm having a hard time accepting the argument that what has been designed and supervised immunizes those individuals but don't immunize the subcontractor. It seems very strange to me that that would be the intent of the legislature, to immunize the intendors but not the actors, so to speak. Well, and I would agree with that, and I think that that's supported by the language in the Continental case that says that since the passage of 13214, the more general statute does not apply to architects, contractors, and engineers. And that's what we have here. We have contractors. Yes, in this case, my client was technically a subcontractor, but we have two contractors here, both working on a construction site, one working at the direction of the other to complete this improvement to real property, which was the building of this new construction building. Maybe I was thinking of something else if you answered this, and I apologize. Sure. But when would the general apply, the general five-year limitation apply? Well, the general five-year limitation would be in a situation like the Pratt case, or Pratt, however you pronounce it, as cited by plaintiff's counsel where the defendants themselves were the homeowners. They were arguing for inclusion in the four-year construction statute versus the ten-year longer statute for breach of contract, and the court found that the defendants were not engaged in any construction-related activity. They were simply the homeowners. So in that case, the more general statute, that one being the ten-year breach of contract, would apply. In this case, you've got to look at the activity involved. The bigger picture, I think, that that's the proposition that McGee stands for, and I think that McGee is very similar to the facts that we have here, is that you can't, the McGee court said, if I could just wrap that thought up, they were not willing to make a distinguishment between how long a subcontractor spent on the job. They were not going to make that distinction because that would take out so many other types of construction-related cases like scaffolding and excavations, all of those things would be then taken out of that construction statute, and I don't think that that was the legislature's intent. Thank you. Mr. Larson. In my reply, I'd first like to direct my comment to Justice Hutchinson. You asked a question regarding improvements, and how do we determine what that is, and actually the St. Lucifer's Rockwell graphic systems case on page four of that decision actually gives a nice summary of that. It says, the term fixture and the phrase improvement to real property are not synonymous. A fixture is often thought of as a former chattel, which while retaining its separate physical identity, is so connected with the realty that a disinterested observer would consider it a part thereof. A common example of such a fixture is a firmness. An improvement, on the other hand, after being installed, may not have an identity separate from the overall system or building in which it is located. So I think that kind of addresses your query regarding the improvement. What was the nature of the damage in that case, do you remember? In the St. Louis versus Rockwell, that was an action against a manufacturer and installer of a printing press. It was a personal injury action. And for Justice McLaren, I know one of the things that you questioned counsel about was the idea of mutuality. And I would submit to you that we do have mutuality here. And your concern about different applications, it's actually addressed in that statute. And again, what we have to remember is our five-year statute is our starting point. That's the general. We start there and can only leave there if we can bring ourselves under the four-year. And so here, we know, and I would submit it's been conceded, that the only way our facts are going to come under the four-year statute is relative to if this is an improvement to real property. And that's where your mutuality concern is addressed by the legislature because that's what implicates your contractors here. If they are doing an improvement to that real property under the four factors as enumerated in St. Louis, then the four-year statute will apply. If not, the five-year statute will apply. Aren't they building a building? Isn't that an improvement to real property? They are not building a building. They are installing something temporary in nature that does not become an essential component of the system, that does not add value or enhance the use of the property. So you're saying that's an example? I asked for an example of when the general would apply of these two. So you're saying you're giving me the example. And I would submit to you that the real question, Your Honor, is the five-year always applies unless you can carve out that exception and get yourself under the four. And the only way you're going to get that is in this situation as a contractor is if you can establish those four factors as enunciated by the Supreme Court. And that plainly and clearly has not been done here. Well, shouldn't you still look at the statutory authority? I mean, the Supreme Court certainly is important, and I want the record to be clear that I said that. And the recording to be clear. Yes. But the statute also includes some other factors that have not been tossed out by the Supreme Court in St. Louis, have they? Absolutely not. And, in fact, the statute here is very specific. And, again, if you look at that title, it's construction, it's design, management, and supervision. They're very specifically carving out an exception to the general five-year statute here for people who design, plan, supervise, observe, or manage construction. And if you do an improvement to that property under those four factors, that gets you under the four-year. If you're not getting an improvement to the property, then you're not getting under. It's a five-year. And, again, the court has to look at it as that four-year statute of limitations is more the exception to the general statute because it's more specific. So you have to come under the specific heading of the four-year in order to avail yourself of its limitations. The language in Continental that counsel keeps relying on, architects, contractors, I know, engineers, does that change this circumstance, the application? No, it does not. And why not in your mind? Because they are trying to invoke 13-214. So in order to invoke it, the only way that a contractor can invoke that, if they're not doing design, which they weren't, they didn't plan, they didn't, no supervision, no observation, no management, the only thing they did was come in and install a temporary heating ventilation system. So the court's only analysis then is, is that an improvement to real property? And the court has to apply the four factors of St. Louis. So one final question. If we interpret the exception too broadly, as opposed to general, the exception could swallow up the general. Correct. Depending on how broadly you interpret it. That's correct. Everything related to construction could take it out of the exception. I would agree with that. Okay. Thank you, Your Honors. Thank you. We'll take the case under advisement. The court's adjourned.